**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | : |
| | : **Case No. 2024-cr-418-JMC** |
| **v.** | : |
| | : |
| **CURTIS HOLLOWAY,** | : |
| | : |
| **Defendant.** | : |

**UNITED STATES' MEMORANDUM IN AID OF SENTENCING**

The United States, by and through the undersigned counsel, respectfully submits this Memorandum in Aid of Sentencing. As described herein, the Defendant is being sentenced on one count of violating 18 U.S.C. § 1512(b)(3). A review of his background, criminal record and conduct during the incident in question supports the conclusion that the Defendant's actions in obstructing justice after a violent and unreasonable use of force warrant a period of incarceration for fifteen months.

In the Indictment filed on September 17, 2024, the Defendant was charged with one felony count of deprivation of constitutional rights in violation of 18 U.S.C. § 242, one count of Obstruction of Justice in violation of 18 U.S.C. 1512(b)(3), and one count of Assault with a Dangerous Weapon in violation of 22 D.C. Code § 242. The Defendant subsequently pled guilty on April 29, 2026, for violating 18 U.S.C. 1512(b)(3). In the plea agreement, the parties anticipated that the final offense level would be 14 and that resulted in a guideline range of 15 to 20 months of imprisonment. The United States agreed in the plea agreement to limit its allocution to the bottom of the applicable guideline. With the completion of the Presentence Investigation Report, the United States respectfully requests the Court to sentence the Defendant to 15 months of

1

incarceration.

## THE DEFENDANT'S OBSTRUCTIVE CONDUCT

On October 13, 2023, the Defendant was working as a Special Police Officer (SPO) for Georgetown Protective Services and was fully licensed by the District of Columbia to act and carry out law enforcement activities as an SPO. On that day, he was assigned to provide law enforcement services at a CVS located at 2009 8th Street, N.W., Washington, D.C.

When the Defendant arrived at the CVS on October 13, 2023, the victim, A.J., was inside of the store causing a disturbance. The Defendant, while in full uniform and at his assigned duty location, exercised his authority as a SPO and directed A.J. to leave the CVS. After a brief exchange of words, A.J. and the Defendant exited the CVS, and the verbal confrontation continued outside on the sidewalk. A.J. eventually left the area and returned a moment later holding an umbrella stand that is used at outside tables at restaurants. When the Defendant observed A.J. with the umbrella stand, the Defendant drew his service weapon, but he did not discharge it. A.J. then threw the umbrella stand through the right rear window of the Defendant's vehicle. A.J. then ran away from the scene and was chased by the Defendant, who was still holding his service weapon. The Defendant caught up to A.J. and struck A.J. in the back of the head with his service weapon, causing a significant laceration and substantial bleeding on A.J.'s head. The Defendant then physically seized A.J. and compelled her to walk back to the street in front of the CVS. The Defendant called the police indicating that he was arresting A.J. for destruction of property.

When the police arrived, the Defendant made several untruthful statements that hid his own conduct and contributed to the arrest of A.J. The Defendant stated that A.J. came toward him, "aggressive-like" despite the absence of evidence that A.J. acted in such manner. He told one officer that he hit A.J. with his baton, not his firearm. The Defendant stated that he saw A.J.

coming with the umbrella stand, so he pulled his baton out and told A.J. not to throw it, and that only after A.J. came toward him like she was going to assault him, he then hit her with his baton. When another officer arrived later, the Defendant told him that A.J. turned around like she was going to attack him when there was no evidence that she did. The statements regarding the use of force were all false.

Subsequently, the Defendant was interviewed by federal law enforcement officers. When inquired about the incident, he provided them with additional untruthful statements.

## I.     SENTENCING GUIDELINES

### A.  The Guidelines Calculation for the Offense

In the plea agreement, the parties estimated and agreed that the initial offense level of 14. Also, with an increase of three levels for substantially interfering with the administration of justice and after a three-point reduction for acceptance of responsibility, the parties agreed that the calculation resulted in an estimated offense level of 14. The parties specifically estimated the following as the Guidelines calculation:

| U.S.S.G. § 2J1.2(a) | Base Offense Level | 14 |
| U.S.S.G. § 2J1.2(b)(2) | Interfering with Administration | 3 |
| **Offense Level** | | **17** |
| U.S.S.G. § 3E1.1(a) | Acceptance of Responsibility | -3 |
| **Final Offense Level** | | **14** |

3

### B. Sentencing Guidelines for Offense Level 14

By entering into the plea agreement, the Defendant has already received a significant benefit for his acceptance of responsibility under USSG 3E1.1 and the dismissal of the other two felonies. The Defendant has a Criminal History score of zero which places him in Criminal History Category I. The guideline range for an offense level of 14 in Criminal History Category I is 15 to 21 months. It is the United States' position that incarceration for a period of 15 months is the appropriate sentence.

### II.    THE 18 U.S.C. § 3553(a) FACTORS

In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court held that the Sentencing Guidelines are no longer mandatory. However, the Court held that Sentencing Guidelines "should be the starting point and the initial benchmark" in determining a defendant's sentence *United States v. Gall*, 552 U.S. 38, 46, 49 (2007). Thus, courts "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Id.* at 49.

This court should consider all the applicable factors set forth in 18 U.S.C. § 3553(a). *Id.* at 49-50. The § 3553(a) factors include, *inter alia*: (1) the nature and circumstances of the offense; (2) the history and characteristics of the defendant; (3) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, and to afford adequate deterrence to criminal conduct and protect the public from further crimes of the defendant; (4) the need to avoid unwarranted sentence disparities; and (5) the need to provide restitution to any victims of the offense. *See* 18 U.S.C. § 3553(a)(1)-(7).

### A. The Nature and Circumstances of the Offenses

The Defendant's conduct at issue is egregious for two reasons. First, the underlying conduct placed the victim, A.J., at great risk and caused a significant injury when he struck her in

the head with his service weapon. The Defendant then misled officers and the FBI with respect to how that injury was sustained.

The victim in the incident has submitted a Victim Impact Statement that was submitted under seal. The statement demonstrates that the context in which the obstruction of justice occurred had a very deleterious effect on the person involved in this incident. Consequently, the Defendant elevated a relatively minor incident involving only property to an injury and obstruction that will spread distrust through the community.

Indeed, as an individual entrusted with applying the law and empowered to take away a citizen's freedom, the Defendant's conduct in misleading the MPD officers who first arrived on scene was a shameless effort to hide his own criminal conduct at the expense of another's freedom. It must also be noted that the Defendant's misleading statements occurred several minutes after the use of force and before the MPD officers arrived on the scene. Put slightly differently, the misleading statements here were not an isolated instance of panic. Rather, they were the calculated result of an officer endeavoring to take away the victim's liberty after striking that person in the head.

Obstruction by someone vested with so much power significantly undermines the trust of the community and negatively impacts the work of those members of law enforcement seeking to fairly and diligently enforce the laws. In a very large part, our criminal justice system is predicated on the conduct of officers. It is perverse to think that a member of law enforcement would strike a woman in the head with a gun and then lie to other officers who arrive on the scene.

### B.  The History and Characteristics of the Defendant

In fairness, the Defendant has had very few arrests and no noteworthy convictions. At the time of sentencing, the Defendant will be almost 67 years old, with an apparently stable home life,

and a steady job.   Nonetheless, the PSI report reflects other considerations that warrant incarceration.  Indeed, Paragraph 62 of the PSI reflects that the Defendant had more than 30 years of experience as a Special Police Officer at the time of the events here.  A person with that much experience can reasonably be expected to understand the importance of being truthful in law enforcement.  Instead of honoring that trust long vested in him by the community, the Defendant opted to mislead law enforcement and subvert the very system he was hired to protect.

The recommendation made by the writer of the PSI is misplaced.  Unlike those defendants who appear before this Court amid difficult circumstances and may reasonably deserve leniency, the Defendant in the instant case has no justification whatsoever for his conduct in obstructing justice.  He is a fully mature adult with a loving family, marketable skills and experience, and a stable home.  The Defendant simply did not want to be held accountable for his conduct.

**C. The Sentence Must Reflect the Seriousness of the Offense, Afford Adequate Deterrence to Criminal Conduct, and Protect the Public From Further Crimes**

The Defendant's behavior displayed a total lack of concern for the integrity of the judicial system.  Moreover, the Defendant displayed no remorse for his disdain for the importance of law enforcement.  First, as noted above, the Defendant had ample opportunity to change his mind and tell the truth before the police arrived.  Second, the record here reflects that the Defendant was on the scene with the victim and the police for a significant period, and, therefore, had ample opportunities to rectify his mistake.  Third, when interviewed by the FBI over a year later, the Defendant made additional misleading statements.  When confront by the FBI agents, the Defendant concocted yet another story.  While not charged with the false statements to the FBI agents, those same statements confirm the Defendant's intent to obstruct justice.

6

### D. Unwarranted Sentencing Disparities

The District of Columbia Circuit has recognized that there will "inevitably . . . [be] sentencing disparities and inequities that can be explained by little more than the identities of the sentencing judges." *United States v. Gardellini*, 545 F.3d 1089, 1096 (D.C. Cir. 2008). The Guidelines "reduce unwarranted federal sentencing disparities," *Freeman v. United States*, 564 U.S. 522, 525 (2011), by "creat[ing] a comprehensive sentencing scheme in which those who commit crimes of similar severity under similar conditions receive similar sentences." *Id.* at 533. A sentencing court "necessarily g[ives] significant weight and consideration to the need to avoid unwarranted disparities" by "correctly calculat[ing] and carefully review[ing] the Guidelines range." *Gall v. United States*, 552 U.S. 38, 54 (2007). The United States' recommendation is consistent with the recommendation in the PSI.

Here, the United States' recommendation is very close to the average and median periods of imprisonment noted in the PSI which is 12 months. Considering the unique connection between the Defendant and law enforcement, an additional three months of incarceration is warranted. The United States' recommendation is within the guidelines and does not reflect a great disparity.

### III.    Fines

#### A.  Sentencing Guideline

Because the offense level is 13, pursuant to U.S.S.G. § 5E1.2 should this court choose to impose a fine the government recommends a fine between $7,500 and $75,000. However, consistent with the factors considered above and given that no significant property damage occurred which necessitates restitution the United States does not recommend a fine.

## IV.      Restitution

The victim in this case incurred $45 worth of expenses in connection with attending an earlier court date and cooperating with the prosecutors.

## CONCLUSION

The United States respectfully submits that a sentence of fifteen years of incarceration is an appropriate and fair sentence considering the offense conduct, the need for deterrence, and the history and characteristics of the Defendant.  Further, the United States requests that Count 1 and 3 in the Indictment be dismissed at the time of sentencing.

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney


By: /s/ Michael T. Truscott
MICHAEL T. TRUSCOTT
D.C. Bar No. 1685577
SUNGTAE KANG
Assistant United States Attorney
Fraud, Public Corruption, and Civil
Rights Section
601 D Street, NW, Room 5.1513
Washington, DC 20530
(202) 252-7223
Michael.truscott2@usdoj.gov